UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA BLOUNT, et al., for themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. SECURITY ASSOCIATES, et al.,<br><br>Defendants. | Civil Action No. 12-809 (JDB) |

### MEMORANDUM OPINION

Plaintiffs Angela Blount, Brian Johnson, Regina Pixley, and Verranda Middleton filed this action on behalf of themselves and others similarly situated against U.S. Security Associates, Inc. ("U.S. Security"), Watkins Security Agency of DC, Inc. ("Watkins DC"), and Watkins Security Agency, Inc. ("Watkins Security Agency").[1]  Plaintiffs are former employees of defendants who worked as security guards in District of Columbia public schools between October 2009 and January 2012.  Plaintiffs allege that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the D.C. Minimum Wage Act Revision Act ("DCMWA"), D.C. Code §§ 32-1001 et seq., and the D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1301 et seq., by reducing plaintiffs' pay for meal breaks during which plaintiffs were not actually relieved from work.

---

[1] Plaintiffs voluntarily dismissed Watkins Security Agency on May 14, 2013.  See Pls.' Notice of Dismissal [ECF 66].  Hence, references to "defendants" in this opinion are to Watkins DC and U.S. Security.

1

In June 2012, plaintiffs filed a motion for an order certifying this case as a collective action and providing court-facilitated notice to potential opt-in plaintiffs. See Pls.' Mot. for Certification of Collective Action and Ct.-Facilitated Notice [ECF 4]. Watkins DC and Watkins Security Agency then filed a motion to dismiss and, shortly thereafter, a motion to stay plaintiffs' collective action certification motion until the Court ruled on their motion to dismiss. See Watkins Defs.' Mot. to Dismiss [ECF 9]; Watkins Defs.' Mot. to Stay [ECF 18]. The Court granted the motion to stay. See 8/15/12 Order [ECF 33]. During the stay, plaintiffs filed a number of consent forms signed by individuals who agreed to become party plaintiffs in this case.[2] In March 2013, the Court denied the pending motion to dismiss. See 3/18/13 Mem. Op. & Order [ECF 46]. At that time, the Court also ordered plaintiffs to file an amended motion for certification of collective action and court-facilitated notice, updated to reflect information about the individuals who had opted in since plaintiffs filed their original motion, and ordered U.S. Security and Watkins DC to respond to plaintiffs' amended motion. See 3/18/13 Order [ECF 47].

Now before the Court are [52] plaintiffs' amended motion for certification of collective action and court-facilitated notice and [48] [49] motions filed by U.S. Security and Watkins DC seeking to conduct pre-conditional certification discovery.[3] For the reasons set forth below, plaintiffs' motion will be granted in part and denied in part, and defendants' motions will be denied.

**BACKGROUND**

---

[2] To date, seventy-seven consent forms have been filed with the Court.

[3] Plaintiffs intend to seek certification of their D.C. Wage Payment and Collection Law claims under Federal Rule of Civil Procedure 23 through a later motion. See Pls.' Am. Mot. for Certification of Collective Action and Ct.-Facilitated Notice [ECF 52] ("Pls.' Am. Mot.") 1 n.1.

Between October 2009 and July 2012, defendants provided security services to about 78 District of Columbia elementary and middle schools. See Compl. [ECF 1] ¶ 19; U.S. Security's Answer [ECF 21] ¶ 20; Pls.' Am. Mot., Ex. D, Decl. of Brian Johnson ("Johnson Decl.") ¶¶ 6-7. These services were provided pursuant to a contract between the District of Columbia and U.S. Security and a subcontract between U.S. Security and Watkins DC. U.S. Security's Answer ¶ 19. Under the subcontract, U.S. Security was responsible for providing guards at 46 of the schools, and Watkins DC was responsible for providing guards at the remaining 32 schools. See id. ¶ 20. U.S. Security employed between 113 and 165 guards;[4] Watkins DC employed about 95 guards. Johnson Decl. ¶¶ 6-7; Johnson-Waller Decl. ¶ 10.

Plaintiffs worked as security guards for either U.S. Security or Watkins DC. Plaintiffs Blount, Johnson, and Pixley worked for U.S. Security and seek to represent themselves and other similarly situated employees of U.S. Security. Compl. ¶ 21. Plaintiff Middleton worked for Watkins DC and seeks to represent herself and other similarly situated employees of Watkins DC. Id. ¶ 22. According to plaintiffs, the employment and payroll policies of the two defendants were identical in all respects relevant to this action. See id. ¶¶ 23, 27-28. Defendants assigned guards to work at one or more of the schools under contract. E.g., Pls.' Am. Mot., Ex. C, Decl. of Angela Blount ("Blount Decl.") ¶ 2; id., Ex. E, Decl. of Regina Pixley ("Pixley Decl.") ¶ 2; id., Ex. F, Decl. of Verranda Middleton ("Middleton Decl.") ¶ 2. The guards had similar job duties, regardless of the schools to which they were assigned. See Compl. ¶ 23; U.S. Security's Answer

---

[4] This is the range between plaintiffs' and U.S. Security's estimates of the number of guards employed by U.S. Security during the relevant time period. See Johnson Decl. ¶ 6 (113 guards); U.S. Security's Opp'n to Pls.' Am. Mot. [ECF 56] ("U.S. Security Opp'n"), Ex. A, Decl. of Tia M. Johnson-Waller ("Johnson-Waller Decl.") ¶ 10 (165 guards).

¶¶ 24-25. These duties included securing school facilities, providing protection to faculty and students, patrolling school buildings and grounds, controlling school access points, monitoring visitors, responding to calls for assistance, and maintaining daily patrol logs and incident reports. E.g., U.S. Security's Answer ¶¶ 24-25; Blount Decl. ¶ 4; Middleton Decl. ¶ 5; Pls.' Am. Mot., Ex. G, Decl. of Alfreda Bacon ("Bacon Decl.") ¶ 4; id., Ex. I, Decl. of Ernestine Davis-Blair ("Davis-Blair Decl.") ¶ 4.

At issue in this lawsuit is defendants' alleged policy of automatically deducting guards' pay for "meal breaks." Plaintiffs allege that this policy was unlawful because during these purported meal breaks plaintiffs were required to remain on school grounds, be "at the ready," monitor their radios, and attend to any contingencies that arose. See Compl. ¶¶ 25-26, 28. Plaintiffs have submitted declarations from the four named plaintiffs and most of the opt-in plaintiffs to support their allegations about defendants' meal break policy. The declarations state that both U.S. Security and Watkins DC automatically deducted thirty minutes worth of pay per shift worked to account for unpaid thirty-minute meal breaks, but that during these meal breaks, guards were forbidden from leaving school grounds, were required to carry a radio, and had to be ready to respond to calls for assistance. E.g., Blount Decl. ¶¶ 9-10, 12-13, 16-17; Middleton Decl. ¶¶ 9-11, 13-14, 17-18; Davis-Blair Decl. ¶¶ 6-8, 11-14 (guard told that she could be "disciplined" for leaving school for any reason); Pls.' Am. Mot., Ex. J, Decl. of Eyona Fountain ¶¶ 6-8, 10, 13-14. The declarations also describe how individual guards were affected by defendants' meal break policy. Some guards, for example, report that their meals breaks were interrupted nearly every day, e.g., Blount Decl. ¶ 15, while others report that their meal breaks were interrupted an average of two to three times per week, e.g., Pixley Decl. ¶ 14.

Plaintiffs' position is that the meal break policy in question applied at all seventy-eight schools at which defendants provided security services and was administered through a centralized payroll system. See Compl. ¶ 27; Pls.' Am. Mot. 5; id., Ex. VV, Declaration of Jon Worley. Plaintiffs assert that the policy was in place from October 2009, when the guards began working for defendants and were informed of the policy at an orientation, to January 2012, when defendants changed the policy such that guards could leave their assigned schools during meal breaks. See Pls.' Am. Mot. 6; see also, e.g., Blount Decl. ¶ 3, 14; Middleton Decl. ¶¶ 4, 14-15. The guards were informed of the policy change at different times. E.g., Blount Decl. ¶ 14 (informed in January 2012); Middleton Decl. ¶ 15 (informed in February 2012); Bates Decl. ¶ 12 (informed in March 2012).

## LEGAL STANDARD

The FLSA and the DCMWA authorize an employee to sue her employer on behalf of herself and other employees who are "similarly situated." 29 U.S.C. § 216(b); D.C. Code § 32-1012(b). This type of action, known as a "collective action," is not subject to the numerosity, commonality, and typicality requirements of a class action under Federal Rule of Civil Procedure 23. See Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004). Instead, "a collective action has only two threshold requirements: the plaintiff must show that she is similarly situated to the other members of the proposed class, and those other members must 'opt in' to the proposed class." Id.

To determine whether a collective action class should be certified, courts typically proceed in two stages. At the first stage, the plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common

policy or plan that violated the law."  Id. (internal quotation marks omitted); accord Dinkel v. MedStar Health, Inc., 880 F. Supp. 2d 49, 52 (D.D.C. 2012).  If the plaintiffs can make this initial showing, then the Court may conditionally certify the class and may facilitate notice of the collective action to potential plaintiffs to give them an opportunity to opt in to the litigation.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-72 (1989); Hunter, 346 F. Supp. 2d at 117.  The case then proceeds as a representative action through discovery.  Hunter, 346 F. Supp. 2d at 117.

The second stage occurs at the close of discovery, at which time the defendant may move to decertify the class based on the evidentiary record developed during the discovery period.  Id. The Court makes a factual determination whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs.  See id.; Dinkel, 880 F. Supp. 2d at 52.  If the Court determines that the putative class members are similarly situated, then the collective action proceeds to trial; if the Court determines that the putative class members are not similarly situated, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the named plaintiffs proceed to trial.  Hunter, 346 F. Supp. 2d at 117.

**DISCUSSION**

This case is at the first stage of the certification process.  In their amended motion, plaintiffs ask the Court to conditionally certify two classes, a U.S. Security class and a Watkins DC class, each consisting of "all security guards employed by [U.S. Security or Watkins DC] at public elementary and middle schools in the District of Columbia during the period beginning October 1, 2009 and ending January 12, 2012."  See Pls.' Am. Mot., Proposed Order [ECF 52-53] 1-2.  Plaintiffs also ask the Court to order the production of information about the proposed class

members and approve the form of notice to be sent to them.

I.      Conditional Certification

Plaintiffs contend that they have made the "modest factual showing" required for conditional certification. Pls.' Am. Mot. 9. Relying on their complaint and the declarations of the named and opt-in plaintiffs, plaintiffs assert that they have shown the following: all of the putative class members were employed by defendants as security guards in District of Columbia elementary and middle schools and had similar job responsibilities; defendants had a centralized payroll system and applied a uniform policy of improperly reducing the putative class members' pay in the same way and by the same amount; and the putative class members advance the same claims for unpaid wages and overtime and seek the same form of relief. Id.

Plaintiffs' burden at this stage is not onerous and may be satisfied based on pleadings and affidavits. See Dinkel, 880 F. Supp. 2d at 53 (noting that the requisite factual showing has been variously described as "'not particularly stringent,' 'fairly lenient,' 'flexible,' and 'not heavy'" (alteration omitted) (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008)); McKinney v. United Stor-All Ctrs., Inc., 585 F. Supp. 2d 6, 8 (D.D.C. 2008). In their complaint, plaintiffs allege that defendants had a shared policy of automatically deducting guards' pay for thirty-minute "meal breaks," even though the guards performed work during their entire shifts and did not receive bona fide meal breaks. See Compl. ¶ 26. The declarations that have been submitted confirm the existence of an automatic deduction policy and the nature of the duties and restrictions allegedly imposed during meal breaks. See, e.g., Blount Decl. ¶¶ 8-10; Johnson Decl. ¶¶ 12-14; Pixley Decl. ¶¶ 12-13, 15-16; Middleton Decl. ¶¶ 9-11; Bacon Decl. ¶¶ 6-8, 14; Davis-Blair Decl. ¶¶ 6-8, 11. The declarations also aver that all of the guards in the

7

proposed class were subject to the challenged policy.  See, e.g., Blount Decl. ¶ 17; Middleton Decl. ¶ 16.  Accordingly, the Court concludes that plaintiffs have made a sufficient showing "that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  See Hunter, 346 F. Supp. 2d at 117 (internal quotation marks omitted).

In their oppositions to plaintiffs' amended motion, defendants do not attempt to refute the existence of an automatic deduction policy or plaintiffs' principal assertions that they were required to remain on premises and be "at the ready" during meal breaks.  Nor do defendants offer any reason to question that the alleged policy applied to the named and potential opt-in plaintiffs alike.  Defendants nevertheless make several arguments as to why conditional certification should not be granted.  None is persuasive.

First, defendants argue that plaintiffs have not identified a common policy or practice that is unlawful.  See Watkins DC's Opp'n to Pls.' Am. Mot. [ECF 55] ("Watkins DC Opp'n") 9; U.S. Security Opp'n 18.  Yet plaintiffs have alleged just that.  Their claims are not based on "the bare existence of an auto-deduct policy" but rather on an alleged unlawful policy of deducting pay for breaks that were not really breaks.  See Watkins DC Opp'n 10-11 (quoting Dinkel, 880 F. Supp. 2d at 57); U.S. Security Opp'n 11 (same).  Defendants attempt to attack plaintiffs' showing by arguing that the particular policy alleged was not unlawful, but by doing so, defendants prematurely argue the merits of this dispute.  Tellingly, they rely on cases such as Haviland v. Catholic Health Initiatives, 729 F. Supp. 2d 1038 (S.D. Iowa 2010), and Summers v. Howard University, 127 F. Supp. 2d 27 (D.D.C. 2000), apparently to defend the policy on the ground that the putative class of security guards was not required to "work" during meal breaks.  See, e.g., Watkins DC Opp'n 11-14 (discussing Haviland as support for assertions that meal break policy is

not unlawful just because it requires employees to remain on employer's premises or be "at the ready" during meal breaks); U.S. Security Opp'n 11 (stating that plaintiffs must show, in addition to fact of auto-deduction policy, that restrictions imposed during meal breaks "'caus[ed] [plaintiffs] to engage in activities predominantly for the benefit of defendant,' converting the breaks into 'work time'" (quoting Summers, 127 F. Supp. 2d at 34)).  But Haviland and Summers are both decisions on motions for summary judgment – i.e., on the merits – and in each case the court had earlier granted conditional certification.  See Haviland, 729 F. Supp. 2d at 1040; Summers, 127 F. Supp. 2d at 29 n.3.  Hence, these cases do not support denial of conditional certification here.[5]  Defendants may renew their arguments about the lawfulness of their policy after both parties have had an opportunity for discovery, but issues going to the merits are not appropriate for consideration at this juncture.  See Dinkel, 880 F. Supp. 2d at 53.

Defendants next argue that the Court should not grant conditional certification because there are material dissimilarities among the putative class members.  In particular, defendants stress that the type, frequency, and impact of interruptions to the guards' meal breaks varied widely from school to school and person to person.  See Watkins DC Opp'n 15-17; U.S. Security Opp'n 19-22.  In other words, defendants claim that conditional certification is inappropriate because their meal break policy affected the putative plaintiffs in different ways.  See U.S. Security Opp'n 20.  But plaintiffs counter that their claims are not dependent on the number of

---

[5] Nor does White v. Baptist Memorial Health Care Corp., No. 08-2478, 2011 WL 1883959 (W.D. Tenn. 2011), also cited by U.S. Security in support of its assertion that the challenged policy was not unlawful, support denial of conditional certification in this case.  See U.S. Security Opp'n 18.  That decision involved a motion for decertification in a case where a class had been conditionally certified, and a higher burden applied to the plaintiffs' claims that they were similarly situated.  White, 2011 WL 1883959, at *2, *10 (contrasting plaintiffs' burdens at first and second stages).

times each guard's meal breaks were interrupted or other effects of defendants' policy that varied among the guards. See Pls.' Reply in Supp. of Am. Mot. [ECF 60] ("Pls.' Reply") 12-13. Rather, plaintiffs' claims are based on the existence of a single policy that "applied the same for all Guards" and "affected all of them" in the same material way: the guards' pay was reduced by a set amount – thirty minutes worth of pay per shift worked[6] – for purported meal breaks that "had to be spent at the work site in a state of readiness." Id.

This case, then, is about a uniformly applied, allegedly unlawful policy, not a policy alleged to be unlawful because of how it was applied. Hence, it does not matter that the actual interruptions to meal breaks differed from one guard to the next, because the focus of plaintiffs' claims is the underlying policy. Nor does it matter, for purposes of conditional certification, that meal breaks were scheduled differently at different schools or that the putative plaintiffs reported their time in different ways. See Watkins DC Opp'n 16; U.S. Security Opp'n 21. Plaintiffs' allegations are that regardless of how meal breaks were scheduled, they were not bona fide, and that regardless of how the guards reported their time, their pay was calculated in a centralized way using uniform deductions for meal breaks. Even the fact that one of the opt-in plaintiffs had a different job title than the other proposed class members does not mean that no class should be certified – just because a particular individual does not properly belong to a class does not mean that there is no proper class. The "Special Police Officer" identified by Watkins DC may or may

---

[6] It is not clear how long a shift must have been for the automatic deduction policy to apply. Plaintiffs' complaint alleges that the meal break policy applied to shifts of six hours or more, Compl. ¶ 26, whereas various declarations indicate that the policy applied to shifts of four hours or more, shifts of eight hours or more, or all shifts, see U.S. Security Opp'n 6-7 (citing declarations). Uncertainty regarding the length of shifts to which the policy applied does not change the Court's conclusion that plaintiffs have made a sufficient showing of a common policy. Discovery will develop further information about the policy's contours.

not properly belong in the ultimate class and be entitled to relief, but that is an issue to be addressed after discovery.  See Watkins DC Opp'n 4, 16, 21 (citing Pls.' Am. Mot., Ex. O, Decl. of James Treece).  The Court concludes that despite some differences among the putative class members, plaintiffs have met their modest initial burden of showing that they and the potential plaintiffs are similarly situated.  See McKinney, 585 F. Supp. 2d at 9-10 (stating that "potential class members do not need to be identical in every respect"); Castillo v. P & R Enters., Inc., 517 F. Supp. 2d 440, 446-48 & n.7 (D.D.C. 2007) (finding that although some differences existed between putative class members, "they appear[ed] to be immaterial to the [conditional certification] motion").

U.S. Security makes the additional contention that plaintiffs are too dissimilar to the putative class to adequately represent the class because they seek to recover damages only through January 2012.  U.S. Security Opp'n 22.  Plaintiffs respond that they have chosen January 2012 as an end date for their claims because it is their understanding that defendants changed the policy at that time, even if some guards were not informed until after January 2012.  Pls.' Reply 15.  In the Court's view, plaintiffs' decision to seek certification and damages based on the period ending in January 2012 was reasonable, and also is consistent with their position that their claims are based on defendant's allegedly unlawful policy rather than on how the policy affected the individual guards.  Hence, the Court rejects U.S. Security's argument that the four named plaintiffs are not appropriate class representatives.

Finally, defendants argue that this case should not proceed as a collective action because it would require individualized determinations for each plaintiff and therefore would be inefficient and unmanageable.  See Watkins DC Opp'n 18-22; U.S. Security Opp'n 23-26.  A

principal benefit of joining parties in a collective action is the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." See Hoffman-LaRoche, 493 U.S. at 170.  If individual issues predominate over common ones, that benefit is likely to be lost.  Hence, some courts have considered the "'manageability and efficiency'" of proceeding as a collective action at the conditional certification stage.  See, e.g., Dinkel, 880 F. Supp. 2d at 56-57 (quoting Chase v. AIMCO Props., L.P., 374 F. Supp. 2d 196, 200 (D.D.C. 2005), and citing other cases).  But see McKinney, 585 F. Supp. 2d at 10 ("[T]he defendants' argument that determining whether the potential plaintiffs are similarly situated requires a highly individualized and fact-intensive analysis is more appropriately addressed at the second stage of the certification process.").  Assuming that it is proper to consider manageability and efficiency issues now, this is not a case where manageability concerns counsel against conditional certification.

  Defendants contend that to assess plaintiffs' claims, the Court will have to make numerous individualized determinations, including as to the frequency and duration of interruptions and other aspects of meal breaks that were unique to each putative class member. See Watkins DC Opp'n 21 (stating that questions to be addressed will necessarily include "how frequently was an individual interrupted during a meal break? how did an individual respond to the various types of interruptions that allegedly occurred?"); U.S. Security Opp'n 26 (stating that guards will have to testify based on memory as to "each interruption they may have experienced during their breaks, the duration of those interruptions, whether they were able to continue their break following the interruption, or any of the other relevant facts and circumstances concerning each of their breaks").  But as discussed above, plaintiffs are not seeking a trial on "the history of

each Guard's every meal break." See Pls.' Reply 13. Rather, they challenge defendants' alleged policy of deducting set amounts from all guards' compensation yet denying all guards bona fide meal breaks. Compare Dinkel, 880 F. Supp. 2d at 57 (conditionally certifying "more circumscribed collective action" after finding that broad proposed action would not be manageable because allegedly unlawful practice would "ultimately turn on the way in which individual supervisors and managers exercised their discretion to manage employees' meal breaks"). A single trial focused on that policy – what duties defendants required of guards during meal breaks and whether those duties constituted work – seems like a manageable undertaking to this Court. Should plaintiffs prevail on liability, then individualized damages calculations would have to be made. But given that plaintiffs seek to recover a fixed amount for each meal break deduction, and not a fact-specific figure dependent on each plaintiff's unique meal break experiences, such calculations would not be unwieldy. In sum, based on the present record, it appears that "common issues of law and fact" at the liability phase and common calculations at the damages stage will make a collective action a more efficient means of resolving plaintiffs' claims than a multitude of separate actions. See Hoffman-LaRoche, 493 U.S. at 170. The Court therefore will conditionally certify the proposed classes.

II.     Defendants' Discovery Motions

Defendants have requested permission to conduct limited discovery before any class is conditionally certified. Specifically, they seek to depose the four named plaintiffs and several opt-in plaintiffs "in order to demonstrate why conditional certification and notice are inappropriate." See U.S. Security's Mot. to Modify Scheduling Order [ECF 48] 1; Watkins DC's Mot. to Modify Scheduling Order [ECF 49] 1 (incorporating U.S. Security's motion). But for the

reasons set forth above, the Court has concluded that the current record is sufficient to support conditional certification. Plaintiffs' claims, as presented, do not depend on the factual information defendants seek in the proposed depositions. See U.S. Security's Mot. to Modify Scheduling Order 7 (seeking deposition testimony on cause, frequency, and nature of interruptions to individual guards' meal breaks). Moreover, the Court's task at this stage is not to resolve factual disputes, so allowing defendants to expand the record as requested likely would serve no useful purpose. See Chase, 374 F. Supp. 2d at 199, 201 (conditionally certifying class even though extensive discovery had been conducted and resulting record did not support collective action at time of certification). Allowing the requested depositions would, however, serve to delay this case further. Defendants could have sought the discovery they now seek months ago, as plaintiffs filed their original collective action certification motion in June 2012. The Court will not further delay resolution of the motion absent a compelling reason to do so, and defendants have offered none. Their discovery requests will be denied.

III.     Facilitation of Notice

Plaintiffs ask the Court to order defendants to produce the names, last known addresses, phone numbers, dates of employment, and dates of birth for all proposed class members. See Proposed Order 2. Courts routinely order the production of names and addresses in collective actions. See, e.g., Castillo, 517 F. Supp. 2d at 448; Hunter, 346 F. Supp. 2d at 121. Hence, defendants will be required to produce the names and addresses of the proposed class members. Plaintiffs assert that additional information is necessary because, "[i]n the experience of Plaintiffs' counsel, inaccurate address information is frequently a bar to providing effective notice." Pls.' Reply 20. The Court sees no reason why the potential class members' dates of

employment should not be disclosed to plaintiffs and will order that information produced as well.  However, the disclosure of phone numbers and dates of birth implicates privacy concerns and, in the Court's view, should not be required absent particularized need.  Accordingly, the Court will not order the production of phone numbers and dates of birth at this time, but if plaintiffs are unable to reach one or more potential plaintiffs based on the information that is produced, they may move for a further order requiring defendants to produce additional information about those individuals.

Plaintiffs also ask the Court to approve the proposed "Notice of Pending Collective Action," attached to plaintiffs' amended motion, which is to be sent to the proposed class members.  See Pls.' Am. Mot., Ex. B.  Watkins DC objects to both the proposed recipients of notice and the proposed form of notice, and asks the Court to give the parties thirty days "to work together to submit a mutually agreeable notice."  Watkins DC Opp'n 25-26.  Regarding the recipients of notice, the Court will allow plaintiffs to send notice to putative class members who were employed by defendants between October 2009 and January 2012, notwithstanding that a two- or three-year statute of limitations will apply and notice will be sent more than three years after the beginning of the notice period.  See 29 U.S.C. § 255(a) (two-year limitations period generally and three-year limitations period for willful violations); D.C. Code. § 32-1013 (three-year limitations period).  It makes sense to tie the notice period to the dates that the challenged policy was in place, as some plaintiffs (the four named plaintiffs and additional plaintiffs who opted in early in this litigation) may bring claims based on the entire period dating back to October 2009.  See Castillo, 517 F. Supp. 2d at 449 (setting notice period beginning June 2004 for notices to be sent after October 2007).  In addition, plaintiffs have represented that they "do

not intend to seek damages for any individual class member beyond the three-year statute of limitations," and hence an inclusive notice period will only help facilitate notice to as many putative class members as possible and will not prejudice defendants.  See Pls.' Reply 16.  As to the form of notice, the Court will give the parties a chance to develop a mutually agreed-upon notice but will not give them thirty days to do so.  The parties will have fifteen days to submit a proposed notice on which they have agreed or, if they cannot agree, to submit separate proposed notices.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part plaintiffs' amended motion for certification of collective action and court-facilitated notice, and deny defendants' motions to conduct pre-conditional certification discovery.  A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: May 23, 2013